## Pugh *v.* Bankers Mutual Insurance Company of Adams County, Appellant.

138

Argued April 12, 1965.   Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Peter U. Hook,* with him *Herman M. Buck,* and *Ray, Buck, John & Hook,* for appellant.

*Ira B. Coldren, Jr.,* with him *Coldren & Adams,* for appellee.

OPINION BY HOFFMAN, J., June 17, 1965:

On or about November 14, 1961, Bankers Mutual Insurance Company of Adams County issued an automobile collision insurance policy to Carl Pugh, with a loss payable clause in favor of the Fayette National Bank and Trust Company of Uniontown. In consideration of a total stated premium of $948.30, the company agreed to insure Pugh's 1958 Mack Tractor for a period of two years against loss or damage in excess of $250. by collision or upset.

On July 23, 1962, the tractor was damaged when, while being operated on a downhill portion of road, it rolled over a hillside and upset.

Pugh brought an action in assumpsit on the policy. A jury awarded him a verdict of $9,064.25. The insurance company then moved for a new trial and for judgment n.o.v. The lower court, sitting en banc, modified and reduced the verdict. It refused, however, the motions for judgment n.o.v. and for a new trial. Accordingly, it entered judgment for Pugh, from which judgment the company now appeals.

## I

Appellant contended at trial that it had cancelled the instant policy of insurance in February, 1962, five months prior to the destruction of appellee's tractor.

The insurance policy contained the standard cancellation clause which provided that, ". . . This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice . . ."

Under this clause, the burden of proof that the policy was cancelled is on the company; this burden is sustained, however, by proper proof of mailing. *Mackiw v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company*, 201 Pa. Superior Ct. 626, 630, 193 A. 2d 745, 746 (1963).

To prove that the notice of cancellation had been mailed, appellant's cancellation clerk testified that a cancellation notice had been duly prepared. Appellant produced, in addition, a carbon copy of the alleged notice of cancellation. The lower half of this document displayed an official stamped post office certificate of mailing stating that two envelopes, addressed to appellee and to the Fayette Bank, had been received from appellant; it also bore a certificate signed by appellant's mailing clerk which stated that he had compared the contents of the envelopes with the notice of cancellation. Appellee testified that he had never received a notice of cancellation.

The lower court charged the jury that the insurance company need not prove appellee's receipt of the notice of cancellation. It recognized, however, that appellee's denial of receipt went to the credibility of the evidence, direct or circumstantial, that the notice had in fact been mailed. *Verecchia v. DeSiato*, 353 Pa. 292, 45 A. 2d 8 (1946); *Mackiw v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company*, supra. Consequently, it submitted the question of mailing to the jury. The jury found that the notice had not been mailed.[1] Appellant now contends

---

[1] The question for the jury was:

"Was a written notice of cancellation of the insurance contract between plaintiff and defendant, deposited in the United States Post Office, Gettysburg, Pa., on or about February 8, 1962, with proper postage affixed on an envelope addressed to Carl Pugh, Route 6, Morgantown, West Virginia?

"Answer: No."

that the trial judge abused his discretion in not ordering a new trial because the jury's finding was plainly against the weight of the evidence.

We cannot agree that appellant's proof of mailing so clearly preponderated. Appellant's mail clerk admitted on cross-examination that he would *never* compare the contents of *any* envelope with the certificate of mailing which he signed. He considered the signing of this certificate, which stated that he had mailed an exact copy of the notice of cancellation, a mere formality.

Thus, the evidence merely indicated that a notice of cancellation had been prepared, and that a piece of mail addressed to appellee, contents unknown, had been received in the post office. The record lacks any positive evidence that the letter to appellant contained a notice of cancellation.

The jury had further reason to doubt that the notice had been mailed. Appellant's employees testified that it was normal office procedure for the company to send a carbon copy of the cancellation notice to the loss payee (here Fayette Bank). The post office certificate of mailing indicated that a letter addressed to the Fayette Bank had been received together with the letter to appellant. Yet, both the vice-president of the bank and a bank employee, who were responsible for these matters, testified that they received no notice of cancellation.

The jury might well have believed these witnesses, for the bank, in fact, took no steps after the alleged cancellation to secure new insurance and thus protect its interest in the tractor. It was the bank's unalterable practice, however, to insist on such insurance.

In view of these circumstances, there was sufficient reason for the jury to conclude that the notice of cancellation had not been mailed. The lower court did not abuse its discretion in refusing to order a new trial on this question.

## II

Among the declarations by the insured in the insurance policy was the following: "Declarations . . . 7. Unless stated herein . . . (c) During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder."

At the conclusion of its case-in-chief, appellant offered to prove that this provision had been breached, since another insurer had cancelled similar insurance within the specified period. This defense had not been raised in the pleadings. The trial judge refused to admit testimony in support of this belated defense or to allow an amendment of appellant's answer.

Subsequently, during the cross-examination of one of appellant's rebuttal witnesses, several statements were elicited which suggested that a prior policy had been cancelled. On this basis appellant contends that judgment n.o.v. should be entered.

Appellant argues that the declaration was a condition of the policy which was breached by the prior cancellation. In the alternative, it contends that the declaration was a misrepresentation by appellee.

Whether such a declaration is a representation or a condition of the policy need not be determined by us at this time. Judgment n.o.v., in either event, might be entered only if the facts are clear. A court's determination in these cases may be based only on the record at the close of trial without any correction of errors in the exclusion or admission of evidence. *Rosche v. McCoy,* 397 Pa. 615, 619, 156 A. 2d 307, 309 (1959) ; *Hughes v. Hanna,* 187 Pa. Superior Ct. 466, 469, 144 A. 2d 617, 619 (1958). The record, in its present state, does not warrant the entry of judgment n.o.v.

The testimony at trial did not conclusively establish the facts concerning the cancellation of a prior policy. It did not reflect that the prior policy was

similar to the one in question. Neither the terms of the prior policy nor the name of the insurance company which allegedly issued it are set forth in the record for our consideration.[2]

In light of the obvious deficiencies in this evidence, judgment n.o.v. may not be entered on this issue for appellant.

### III

Appellant further contends that a new trial should be ordered, because the lower court abused its discretion in refusing to permit appellant to amend its answer to plead and prove as an affirmative defense the cancellation of the prior policy.

A party may be deemed to have waived all defenses which he does not raise in the pleadings. Pa. R.C.P. Nos. 1030, 1032; *Filler Products, Inc. v. Corriere,* 381 Pa. 394, 399, 113 A. 2d 219, 223 (1955). Amendments of pleadings are permitted; the allowance of such amendments, however, rests within the sound discretion of the trial court. Pa. R.C.P. No. 1033; *Sheppard v. First Pennsylvania Banking and Trust Company,* 199 Pa. Superior Ct. 190, 192-193, 184 A. 2d 309, 311 (1962). Although the policy of liberal allowance of amendment of pleadings is to be encouraged, *Schaffer v. Larzelere,* 410 Pa. 402, 406-407, 189 A. 2d 267, 270 (1963); *Sheppard v. First Pennsylvania Banking and Trust Company,* supra, we do not believe that the judge abused his discretion by disallowing the amendment in the instant case.

Appellant attempted to raise the affirmative defense only after both parties had completed their cases. Yet, appellant admitted that it had been made aware of the cancellation of an earlier policy during the taking of pretrial depositions, four months prior to trial.

---

[2] Whether a new trial should be granted so that appellant may prove this breach is considered in Section III of this opinion.

The complications arising from this delinquent amendment would have been many. The affirmative defense would have been "New Matter" under Pa. R.C.P. No. 1030. Appellee would have replied to this unexpected defense under Pa. R.C.P. No. 1017. The trial, which was before a jury, would have come to a halt until the issues in these pleadings were clarified.

Multiple new and different problems would have been raised by this additional defense. Appellant admitted at trial that appellee had no personal knowledge of the earlier cancellation.[3] Thus, appellee would have been required to prepare a defense on a matter concerning which he had no knowledge. In effect, a whole new trial would have been required to prove both the existence of and the proper cancellation of the earlier policy. Despite these additional complications, in the brief submitted to us on appeal, appellant has not suggested or offered the slightest justification for its failure to set forth this defense until the day of trial.

The Rules of Civil Procedure are designed to secure not only a "just" but also a "speedy" and "inexpensive" determination of every action or proceeding to which they are applicable. Pa. R.C.P. No. 126. Liberality in the amendment of pleadings is encouraged to insure justice for all parties. However, appellant may not take advantage of this liberality by inserting defenses of which it has prior knowledge, at its own pleasure, without explanation. This capricious action would have placed an undue burden on appellee and on the court's orderly proceedings. The lower court did not abuse its discretion in refusing appellant's attempted amendment.

---

[3] We are told that the earlier policy had apparently been cancelled because the insurance agent had failed to remit the premium to the company. A new policy was then secured by the bank and the insurance agent without notice to the appellee.

## IV

Appellant finally contends that judgment n.o.v. should be entered in light of the following exclusionary clause which provides that the policy does not apply to: ". . . any damage to the automobile which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure . . ."

Appellant argues that this case comes within the exclusionary clause, because the damage was caused by brake failure.

Once before, in *Radella v. Bankers Mutual Fire Insurance Company of Lancaster*, 165 Pa. Superior Ct. 633, 70 A. 2d 407 (1950), we were faced with a similar exclusionary clause. We held in that case that the insurance company could not disclaim liability because: "No evidence was offered to support the contention that mechanical failure caused the upset . . . In the absence of testimony establishing that mechanical failure alone caused the damage, we cannot sustain the [insurance company's] contention. Under the provisions of the clause in question to preclude recovery, [the insurance company] must prove that the upset was due to *mechanical* failure."

In the instant case, appellant has similarly failed to prove that the accident was due to brake failure alone.

The only testimony concerning the accident was that of the driver of the vehicle. He testified that as he began to descend a long grade, he became ill and decided to pull off the road. When he attempted to stop the truck on the berm, the brakes, which had theretofore worked perfectly, failed to respond; he then jumped out of the cab. The driverless vehicle continued over a cliff into a deep ravine. The driver returned to the scene of the accident the following day but was unable to ascertain exactly what had caused the accident.

There is no mention in the record of an examination of the damaged vehicle by appellant.

Thus, appellant offered no proof to substantiate the existence of brake failure, nor was any evidence adduced which proved that brake failure alone caused the accident. The testimony of the driver allows us only to guess at the real reason for the absence of braking power. Was it caused by the driver's inability to apply the brakes properly because of his illness, the parting of an airline because of a collision with some foreign object on the roadside, an actual breakdown, or a variety of other possibilities? Whatever may have been the cause, however, such surmise or conjecture is not sufficient to sustain a judgment n.o.v.[4] *Moyer v. Ford Motor Company*, 205 Pa. Superior Ct. 384, 388, 209 A. 2d 43, 45 (1965).

Order affirmed.

---

[4] Even if brake failure had been established conclusively, we are not convinced that such failure would have been considered the sole cause of the damage. The Court of Civil Appeals of Texas in *Home Service Casualty Insurance Company v. Barry*, 277 S.W. 2d 280 (1955), was faced with a similar problem. In that case the right rear wheels of plaintiff's truck came off as plaintiff was driving down a slope. Consequently, the rear end of the truck dropped to the ground, and the truck continued downhill and eventually upset. The insurance company claimed that this damage was excluded from coverage by reason of a provision similar to the one presently under consideration. The court disagreed, stating at page 285: "It seems to us that since the policy does cover an upset, and since the dump truck was loaded, the trial court could reasonably infer that the upset was due to the load of the truck and the speed of the truck and the downgrade, and that these three elements would necessarily contribute to the force with which the dump bed was thrown from its natural position against the bed of the road and constitute a new and intervening cause." Our opinion in the instant case does not reach this question, nor should it be interpreted in the future as having done so. We wish to make quite clear that our present holding is based exclusively on the insufficiency of appellant's evidence proving brake failure. Whether such brake failure, if proved, would have been construed as the sole cause of the damage is not decided by us now.