Kevin ALLEN, Appellant

v.

COUNTY OF WAYNE, Acting in and Through the WAYNE COUNTY CORRECTIONAL FACILITY and the County of Wayne, Acting in and Through the Wayne County Commissioners, Brian W. Smith, Anthony V. Herzog, and Wendell R. Kay.

Commonwealth Court of Pennsylvania.

Argued March 13, 2013.
Decided Sept. 13, 2013.

Scott E. Schermerhorn, Scranton, for appellant.

Michael J. Donohue, Scranton, for appellees.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY President Judge PELLEGRINI.[1]

Kevin Allen (Plaintiff) appeals from an order of the Court of Common Pleas of Wayne County (trial court) sustaining the preliminary objections in the nature of a demurrer of Wayne County, acting in and through the Wayne County Correctional Facility and the Wayne County Commissioners, Brian W. Smith, Anthony V. Herzog and Wendell R. Kay (collectively, County), and dismissing Plaintiff's personal injury complaint on the basis that a county prison inmate is not an employee for purposes of the governmental immunity provisions in Sections 8541–8564 of the Judicial Code, 42 Pa.C.S. §§ 8541–8564, commonly referred to as the Political Subdivision Tort Claims Act (Act). For the reasons that follow, we reverse the trial court's order and remand for further proceedings consistent with this Opinion.

In September 2009, Plaintiff, while an inmate at the County's correctional facility, sustained serious injuries when another inmate, Jason Hicks (Hicks), backed into him with a lawn tractor, causing Plaintiff's right leg to become pinned underneath the tractor while they were performing yard work at a correctional facility in Monroe County.

---

1. This opinion was reassigned to the authoring judge on June 18, 2013.

Plaintiff filed a personal injury complaint in the trial court averring that Hicks was an employee or agent of the County within the meaning of 42 Pa.C.S. § 8501; that negligence on the part of the County, through its employee, caused his injuries; and that the circumstances surrounding the accident fell within the vehicle liability exception to governmental immunity, 42 Pa.C.S. § 8542(b)(*l*). Plaintiff further alleged that the lawn tractor's reverse warning mechanism was broken or disabled at the time of the accident, and the County's negligent maintenance of the lawn tractor also fell within the vehicle liability exception. The County filed preliminary objections in the nature of a demurrer.[2]

 Ultimately, the trial court sustained the County's preliminary objections on the basis that a county prison inmate is not a local agency employee for purposes of liability under the exceptions to governmental immunity in 42 Pa.C.S. § 8542. Without addressing Plaintiff's claim as to the County's alleged improper maintenance of the lawn tractor's reverse warning mechanism, the trial court dismissed Plaintiff's complaint with prejudice. This appeal by Plaintiff followed.[3]

**I.**

 On appeal, Plaintiff first argues that the trial court erred in holding that an inmate performing yard maintenance at a neighboring county correctional facility is not a county employee for purposes of governmental liability under 42 Pa.C.S. § 8542. Plaintiff contends that inmate Hicks fell within the definition of employee at the time of the accident because he was acting on behalf of the County when he was operating the lawn tractor while doing yard work at the County's jail.

To impose liability on the County, the Plaintiff must show that the negligent action was caused by the negligence of the local agency or one of its employees and also falls within one of the exceptions to immunity. Section 8542(a), 42 Pa.C.S. § 8542(a), provides, in relevant part:

(a) **Liability imposed.**—A local agency[4] shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):

2. Under the Pennsylvania Rules of Civil Procedure, immunity from suit is an affirmative defense properly raised as new matter in a responsive pleading. *Smolsky v. Pennsylvania General Assembly*, 34 A.3d 316, 321 n. 7 (Pa. Cmwlth.2011). Nonetheless, we recognize that courts permit a limited exception to this rule and allow parties to raise an immunity defense as a preliminary objection. *Id.* The immunity defense, however, must be clearly applicable on the face of the complaint. *Id.* Thus, where the plaintiff does not object to the improper procedure, courts may rule on the affirmative defense of immunity when raised in a preliminary objection. *Id.* Here, Plaintiff raised no objection to the County raising governmental immunity as a preliminary objection.

3. Our review of a trial court's order sustaining preliminary objections in the nature of a

demurrer is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Bell v. Twp. of Spring Brook*, 30 A.3d 554, 557 n. 7 (Pa. Cmwlth.2011). A demurrer admits all-well pled relevant and material facts, and can only be sustained where the right to relief is clear and free from doubt. *Id.* To that end, conclusions or averments of law shall not be considered admitted as true by a demurrer. *Id.*

4. Section 8501 of the Judicial Code defines "local agency" as "[a] government unit other than the Commonwealth government." 42 Pa.C.S. § 8501. A county is a local agency to which governmental immunity applies rather than a Commonwealth party protected by sovereign immunity. *Simko v. County of Allegheny*, 869 A.2d 571, 573 (Pa.Cmwlth.2005).

(1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); [5] and

(2) **The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b).** As used in this paragraph, 'negligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

(Emphasis added).

The exception to immunity that is applicable to this case is contained in Section 8542(b)(1), which provides, in relevant part:

(b) **Acts which may impose liability.**— The following acts by a local agency **or any of its employees** may result in the imposition of liability on a local agency:

(1) *Vehicle liability.*—The operation of any motor vehicle in the possession or control of the local agency.... As used in this paragraph, 'motor vehicle' means any vehicle which is self-propelled and any attachment thereto, including vehicles operated by rail, through water or in the air.

42 Pa.C.S. § 8542(b)(*l*) (emphasis added).[6]

The dispute here is whether Hicks was an employee within the meaning of Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, which defines an "employee" for purposes of the Act as:

Any person who is acting or who has acted on behalf of a government unit whether on a permanent or temporary basis, **whether compensated or not** and whether within or without the territorial boundaries of the government unit, in-

---

5. The dissent posits that if Hicks is an employee of the County, it must follow that Plaintiff is also an employee of the County. Because employees have no common law cause of action against employers and only have a remedy under the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4, 2501–2708, *the dissent contends that Section 8542(a)(1) is not met here.* The position is based on the unanalyzed supposition that the definition of who is an "employee" under 42 Pa.C.S. § 8501 for imposing liability for negligence equally applies to the injured Plaintiff.

 However, no such argument was ever raised by the County. In fact, in its brief to this Court, the County states: "[Plaintiff's] claim is barred by statutory governmental immunity **unless the Court finds that the Wayne County Correctional Facility inmate who was operating the riding lawn mower/tractor was an employee of Wayne County.**" (Appellees' Brief at 4) (emphasis added).

6. The County contends in its brief to this Court that a lawn tractor is not a motor vehicle within the meaning of the Act. Be-

cause the term "vehicle" is not defined in the Act, the County relies upon Section 102 of the Vehicle Code, 75 Pa.C.S. § 102, which defines "vehicle" as:

 Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks. The term does not include a self-propelled wheel chair or an electrical mobility device operated by and designed for the exclusive use of a person with a mobility-related disability.

This provision directly conflicts with the plain language of the Act because only devices that can be operated on the highway are within the Vehicle Code's definition, while the Act's definition is much more expansive, including vehicles that operate on land, sea or in the air. Because there is no dispute that the lawn tractor here was self-propelled, it is clearly a "motor vehicle" within the meaning of the Act.

cluding any volunteer fireman and any elected or appointed officer, member of a governing body **or other person designated to act for the government unit.** Independent contractors under contract to the government unit and their employees and agents and persons performing tasks over which the government unit has no legal right of control are not employees of the government unit.

(Emphasis added).

In finding that Hicks was not an employee under this provision, the trial court relied on a number of cases where this Court has previously held that Pennsylvania inmates are not employees in the context of other statutes. For example, in *Heffran v. Department of Labor and Industry*, 863 A.2d 1260, 1263 (Pa.Cmwlth. 2004), *aff'd*, 584 Pa. 540, 886 A.2d 222 (2005), in which this Court determined the nature of an inmate's status for purposes of his rights under the Worker and Community Right–to–Know Act,[7] we stated:

> It has long been settled that an inmate at a correctional facility is not an employee of the correctional facility because there is no employer/employee relationship as an inmate's labor belongs to the prison, and the remuneration paid to the inmate is a gratuitous payment

authorized by the state as a rehabilitative tool rather than wages. *Mays v. Fulcomer*, [552 A.2d 750 (Pa.Cmwlth. 1989) ].

In *Heffran*, we relied on *Mays*, wherein we held that the remuneration received by state prison inmates for services performed at the prison does not constitute "wages" earned by an employee under 42 Pa.C.S. § 8127 (relating to personal earnings exempt from attachment, execution or other process),[8] the Minimum Wage Act of 1968,[9] or the Unemployment Compensation Law.[10] In *Mays*, we stressed that there is no employer/employee relationship with inmates because their labor belongs to the prison. *Mays*, 552 A.2d at 753.

*Heffran* also cited *Salah v. Pennsylvania Labor Relations Board*, 38 Pa.Cmwlth. 397, 394 A.2d 1053 (1978), in which we held that prison inmates were not public employees under the Public Employe Relations Act[11] (PERA) because the purpose of an inmate's imprisonment is penal and the services an inmate performs are intended to train and rehabilitate, not to provide a source of income as a means of earning a livelihood.[12]

While the principles stated in those cases may well be true in interpreting

---

**7.** Act of October 5, 1984, P.L. 734, 35 P.S. §§ 7301–7320 (relating to employers supplying employees with material handling safety data sheets for hazardous substances used in the workplace).

**8.** In 1998, 42 Pa.C.S. § 8127 was amended to allow deductions from inmate remuneration for purposes of collecting restitution.

**9.** Act of January 17, 1968, P.L. 11, *as amended*, 43 P.S. §§ 333.101–333.115.

**10.** Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

**11.** Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1102.2301.

**12.** In its brief, the County also argues that the creation of an employer-employee relationship requires the consent of both parties. *Gadd v. Barone*, 167 Pa.Super. 477, 75 A.2d 620 (1950); *see also, Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970) (in order for a vehicle driver to be considered as an agent or employee of a vehicle owner, an owner must consent that the driver shall act on his behalf and driver must consent to so act). Here, the County asserts, there is no consent by Hicks to be incarcerated in the County's correctional facility or to provide labor within the facility.

other statutes, they are not in accord with the definition contained in 42 Pa.C.S. § 8501, which provides that "any person who is acting ... on behalf of a government unit" is an employee within the meaning of the Act. The purpose of this provision is imposing on local agencies liability for negligent conduct by those acting on their behalf within one of the exceptions to immunity and correspondingly shielding from liability where one of the exceptions does not apply. Moreover, under this provision, the status of the person, the reason the person is engaged in the activity, the purpose for which he or she is engaged in the activity or the lack of a formal employment relationship is irrelevant in determining whether the person is an employee for purposes of tort immunity.[13] All that is required is that the person be acting on behalf of the local agency.

In this case, there is no dispute that Hicks is a person or that he was acting on behalf of and at the direction of the County when he injured Plaintiff. Because Hicks falls squarely within the clear and unambiguous language of 42 Pa.C.S. § 8501, he must be considered to be a County employee for purposes of governmental immunity. Accordingly, the trial court erred in sustaining the County's preliminary objections and dismissing Plaintiff's complaint.

## II.

■ Plaintiff also argues that the trial court erred by failing to address his claim that improper maintenance of the lawn

tractor's reverse warning mechanism qualified as an exception to governmental immunity. In light of the averments in Plaintiff's complaint, we must agree.

In Paragraph 13 of his complaint, Plaintiff averred that the County improperly repaired or maintained the lawn tractor "in that the safety switch designed to alert others when the tractor was in a reverse (or backing up) position was broken and/or disabled." Compl. at ¶ 13; Reproduced Record (R.R.) at 4. Plaintiff further averred that the negligent maintenance of the tractor fell within the vehicle liability exception to governmental immunity. *Id.* at ¶ 14; R.R. at 4. Thus, Plaintiff averred that his injuries were due not only to Hicks' negligent operation of the lawn tractor, but also the County's negligent maintenance of the lawn tractor, which resulted in the failure of the lawn tractor's safety mechanism designed to warn others when the lawn tractor is operating in reverse. *See id.* at ¶¶ 16(a)-(h); R.R. at 5.

In *Jones v. Chieffo*, 549 Pa. 46, 700 A.2d 417 (1997), our Supreme Court held that where the other elements of the Act are met, a governmental entity is not entitled to immunity simply because a third party's negligence or criminal conduct is jointly responsible for the harm.

In *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995), a decedent's estate brought a wrongful death suit against a drunk driver and the Pennsylvania Department of Transportation (PennDOT). The plaintiff alleged in part that Penn-

---

13. For example, a high school football player who accidentally injured a spectator at a school football game was "acting on behalf of the school district" and considered a school district employee within the ambit of 42 Pa. C.S. § 8501 because he was participating in a school-sanctioned activity, represented the school by wearing its uniform, followed his coach's instructions, and followed school dis-

trict policies in carrying out the activity. *Wilson v. Miladin*, 123 Pa.Cmwlth. 405, 553 A.2d 535, 536–37 (1989). *See also, Murray v. Zarger*, 164 Pa.Cmwlth. 157, 642 A.2d 575, 578 (1994) ("[T]he definition of 'employee' in Section 8501 of the Act does not require that an employee be compensated or possess a formal employment contract with the government unit, as long as he is acting in its interests.")

DOT's negligent design of the road was a substantial factor in causing the fatal accident. The Supreme Court determined that the rule of joint liability for concurrent causes in cases under the Act applied equally to cases involving sovereign immunity. The Court further reasoned that the question of concurrent causation is normally one for the jury. *Powell,* 539 Pa. at 492, 653 A.2d at 623.

Further, the *Powell* Court rejected PennDOT's argument that the drunk driver's criminal negligence constituted a superseding intervening cause relieving PennDOT of any liability. In so doing, the Court reasoned:

we do not agree that any violation of a criminal statute constitutes a superseding cause. Instead, **the proper focus is not on the criminal nature of the negligent act, but instead on whether the act was so extraordinary as not to be reasonably foreseeable.** This was our approach in *Crowell.* There, the City of Philadelphia similarly argued that the defendant driver's conviction for driving under the influence was a superseding cause that insulated the City from all liability. We rejected this argument and, instead, found that the driver's actions in following the misplaced sign were entirely 'foreseeable.' Therefore, we cannot conclude that [the drunk driver's] conviction for driving under the influence was a superseding cause.

**A determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury.** It is for the jury in the instant case to determine whether [the drunk driver's] actions in attempting to pass a car while under the influence of alcohol thus crossing into [the decedent's] lane were so extraordinary as to be unforeseeable to PENNDOT when designing the highway. Accord-

ingly, we cannot say with certainty that no recovery against PENNDOT is possible.

*Id.* at 495–96, 653 A.2d at 624–25 (citations omitted) (emphasis added).

In light of our Supreme Court's decisions in *Jones* and *Powell,* the County may be found liable for a percentage of Plaintiff's damages based on its alleged negligent maintenance of the lawn tractor as a concurrent cause of his injuries. Therefore, this case should go beyond the pleadings stage to determine whether there is support for Plaintiff's allegation that the County negligently failed to maintain the lawn tractor's reverse or back-up warning signal and that the County's negligence was a substantial factor in causing Plaintiff's injuries. *Jones.*

Furthermore, a potential jury question may also exist as to whether Hicks' actions in negligently backing up the lawn tractor without checking behind him were so extraordinary as to be unforeseeable to the County. *Powell.* If a jury finds Hicks' actions to be foreseeable by the County, they would not constitute a superseding cause relieving the County from liability for its concurrent negligence. *Id.*

Accordingly, we reverse the trial court's order and remand for further proceedings to determine whether the County is liable for Plaintiff's injuries caused by the actions of inmate Hicks under the vehicle exception to governmental immunity and whether the County's alleged negligent maintenance of the lawn tractor's reverse warning signal was a concurrent cause of Plaintiff's injuries.

Judge McGINLEY dissents.

### ORDER

AND NOW, this *13th* day of *September,* 2013, the order of the Court of Common Pleas of Wayne County, dated June 28,

2012, at No. 526–2011–CIVIL, is reversed and the matter is remanded for further proceedings to determine whether the County is liable for Plaintiff's injuries caused by the actions of inmate Jason Hicks under the vehicle exception to governmental immunity and whether the County's alleged negligent maintenance of the lawn tractor's reverse warning signal was a concurrent cause of Plaintiff's injuries.

Jurisdiction relinquished.

### CONCURRING and DISSENTING OPINION BY Judge SIMPSON.

I concur in the majority's resolution of the improper maintenance issue. However, I strongly disagree with the majority's resolution of the immunity issue. As I would affirm on this issue, I dissent in part.

Here, Appellant/Plaintiff is an inmate of the Wayne County Correctional Facility. He was injured by another inmate while both were performing yard work. He sued the County under the theory that the other inmate was a negligent County "employee" as that term is defined in Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, part of the statute often referred to as the Political Subdivision Tort Claims Act (Tort Claims Act). Followed to its conclusion, this theory contemplates that Appellant/Plaintiff, also a directed, working inmate, was also an "employee" of the County. There is no factual basis in Appellant/Plaintiff's Complaint to distinguish between the two inmates. Consequently, the "employee" Appellant/Plaintiff sues his "employer" at common law for injuries sustained during his "employment." Not only does this theory offend common sense, it is clearly contrary to law for several reasons.

First, Section 8542(a) of the Tort Claims Act, 42 Pa.C.S. § 8542(a), partially waives governmental immunity if *both* of the following conditions are satisfied:

(1) *The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense* under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a) (emphasis added).

Thus, in order for governmental immunity of a local agency to be waived, a plaintiff must, among other things, incur damages that would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having an immunity defense. 42 Pa.C.S. § 8542(a)(1). Unfortunately, the majority omits from its analysis the limitation on the waiver of immunity set forth in Section 8542(a)(1).

Significantly, there is no longer any common law cause of action in Pennsylvania through which an employee may recover from his employer for injuries incurred during employment. Indeed, the controlling statute, the Workers' Compensation Act (Act),[1] affords the exclusive remedy in such circumstances (thereby precluding common law causes of action), and it mandates separate statutory immunity to an employer from such suits. *See* Section

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

301(c)(1) of the Act, 77 P.S. § 411(1) (the term "injury" and "personal injury" as used in the Act shall include all injuries to an employee caused by the condition of the premises or by operation of the employer's business or affairs thereon); Section 303(a) of the Act, 77 P.S. § 481(a) (the liability of an employer under the Act *shall be exclusive* and in place of any and all liability to its employees); *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158 (1983) (Act provided exclusive remedy for employee injured by negligent conduct of co-employee; employee precluded from maintaining civil action against employer even where the injury (impotence) was not a compensable injury under the Act); *Ranalli v. Rohm & Haas Co.*, 983 A.2d 732 (Pa.Super.2009) (simply because injury is not compensable under the Act does not mean workers' compensation bar may be disregarded); *Alston v. St. Paul Ins. Cos.*, 389 Pa.Super. 396, 567 A.2d 663 (1989) (aside from intentional acts of a third person intended to injure an employee for reasons personal to him, the Act provides an injured worker with an exclusive remedy at law; in essence the Act is based on a theory of trade-offs: the employer is forced to surrender the numerous defenses which may be available at common law; however, the injured employee's recourse is strictly confined to those remedies provided by the Act).

Moreover, recovery under the Workers' Compensation Act is not within the jurisdiction of common pleas courts, such as the trial court here. As a result, Appellant/Plaintiff cannot proceed in the trial court at common law or under a statute based on his stated theory of liability.[2]

Second, while there may be causes of action through which an inmate could sue a county and its employees for occurrences during his confinement, as in a civil rights action under 42 U.S.C. § 1983, Appellant/Plaintiff does not plead them here.

Third, Appellant/Plaintiff's theory fails under the appropriate construction of the definition of "employee" under the Tort Claims Act.

Appellant/Plaintiff contends that given Section 8501's broad language, an inmate working on yard maintenance at a county correctional facility, with or without pay, falls within the Tort Claim Act's definition of employee. "Section 8501 ... does not require that an employee be compensated or possess a formal employment contract with the government unit, as long as he is acting in its interests." *Murray v. Zarger*, 164 Pa.Cmwlth. 157, 642 A.2d 575, 578 (1994); *see also Wilson v. Miladin*, 123 Pa.Cmwlth. 405, 553 A.2d 535 (1989) (Tort Claim Act's definition of employee much broader than the term's standard definition; under limited circumstances, a high school football player qualifies as school district employee under Tort Claims Act; by voluntarily participating in game, he acted on behalf of school district, he wore his school's uniform, and he followed the coaches' instructions and the school district's rules governing competition). Thus, Appellant/Plaintiff urges, while operating the lawn tractor within the territorial boundaries of the County's correctional facility, the other inmate came within the broad definition of employee in 42 Pa.C.S. § 8501. *Murray; Wilson.*

Conversely, the County contends the trial court properly determined that a county inmate cannot be considered a county employee while performing yard maintenance at a correctional facility. The County ar-

---

**2.** Notably, if an inmate "employee" injured someone other than another inmate the liability situation could be different. This is be-cause the injured party would not be a directed, working inmate and thus not another "employee."

gues that both parties must consent to the creation of an employment relationship. *Gadd v. Barone*, 167 Pa.Super. 477, 75 A.2d 620 (1950); *see also Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970) (in order for vehicle driver to be considered as an agent or employee of the vehicle owner, the owner must consent that the driver shall act on his behalf and the driver must consent to so act). Here, the County asserts, there is obviously no consent by the other inmate to be incarcerated in the County's correctional facility or to provide labor within the facility.

In light of the parties' conflicting, but plausible interpretations of 42 Pa.C.S. § 8501's definition of "employee," especially the phrase "acting ... on behalf of a government unit," I conclude that a latent ambiguity[3] in the statutory definition of employee arises when addressing the issue of whether a prison inmate performing yard work at a correctional facility qualifies as an employee for purposes of liability under the exceptions to governmental immunity. *See Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 601 Pa. 449, 974 A.2d 1144 (2009) (a statute is ambiguous where the parties offer differing plausible interpretations of its language). In cases where a latent ambiguity in the statute exists, I must discern the legislative intent behind the statute. *Id.*

To begin, in *Kiley by Kiley v. City of Philadelphia*, 537 Pa. 502, 505–506, 645 A.2d 184, 185 (1994), our Supreme Court reaffirmed that the Tort Claims Act "is a legislatively imposed shield of immunity against any damages on account of any injury to any person or property by any act of a local agency or employees thereof

or any other person, except as provided in the statute itself." In light of the clear legislative intent to shield the government from exposure to tort liability for any of its acts, the exceptions to the general rule of immunity are strictly construed. *Id.*

To that end, I recognize the exceptions to governmental immunity are narrowly interpreted against injured plaintiffs. *Leone v. Dep't of Transp.*, 780 A.2d 754 (Pa.Cmwlth.2001). Thus, any harm caused by acts of third parties falls outside of the Tort Claim Act's scope of liability and may not be imputed to the local agency. *Id.*

In accord with the well-settled line of cases narrowly construing the terms of the Tort Claims Act, I would hold that a prison inmate performing yard work at a correctional facility does not fall within the definition of "employee." As discussed more fully below, inmates are incarcerated at correctional facilities for penal rather than employment purposes.

The determination regarding the existence of an employer/employee relationship is a question of law that is determined on the unique facts of each case. *State Auto. Mut. Ins. Co. v. Christie*, 802 A.2d 625 (Pa.Super.2002). The parties' intention is the ultimate guide in determining whether an employment contract exists, and, in order to ascertain the intention, a court may take into consideration the surrounding circumstances, the situation of the parties, and the objects that they apparently have in view. *Luteran v. Loral Fairchild Corp.*, 455 Pa.Super. 364, 688 A.2d 211 (1997).

Significantly, to create an employer/employee relationship, the assent of both parties is essential. *Gadd* (citing *Harris v.*

---

**3.** "There are two types of ambiguity: patent and latent." *In re Wilton*, 921 A.2d 509, 513 (Pa.Super.2007). A patent ambiguity appears on the face of the document or statute and is a result of defective language. *Id.* A latent ambiguity arises from collateral facts which render the meaning of a document or statute uncertain even though the language of the document or statute appears clear on its face. *Id.*

*Seiavitch,* 336 Pa. 294, 9 A.2d 375 (1939)); *see also Morley v. Workmen's Comp. Appeal Bd. (Borough of Glenfield),* 49 Pa. Cmwlth. 98, 410 A.2d 110 (1980) (employer/employee relationship cannot be imposed upon a person without his consent, express or implied).

Here, considering the surrounding circumstances, neither the other inmate nor the County freely chose to enter into an employment relationship with the other. Indeed, Appellant/Plaintiff does not aver or offer to prove that the other inmate consented to his incarceration or intended to act on behalf of the County during his confinement. Rather, the other inmate was compelled by court order to confinement in the correctional facility.

Likewise, Appellant/Plaintiff did not aver, and cannot aver, that the County freely chose to accept an employment relationship with the other inmate and make him its actor. Instead, the County was required by court order to receive the other inmate and confine him in its correctional facility.

These conclusions are consistent with the holdings in several cases cited by the trial court which, although arising under different statutes, reflect the unanimous view that Pennsylvania inmates are not employees under state law.[4] Thus, in *Heffran v. Department of Labor and Industry,* 863 A.2d 1260, 1263 (Pa.Cmwlth.2004), *aff'd,* 584 Pa. 540, 886 A.2d 222 (2005), this Court stated:

It has long been settled that an inmate at a correctional facility is not an employee of the correctional facility because there is no employer/employee relationship as an inmate's labor belongs to the prison, and the remuneration paid to the inmate is a gratuitous payment authorized by the state as a rehabilitative tool rather than wages. *Mays v. Fulcomer,* [552 A.2d 750 (Pa.Cmwlth. 1989) ].

In *Heffran,* we determined the nature of an inmate's status for purposes of his rights under the Worker and Community Right–to–Know Act.[5] Our rationale in that case is also applicable here.

In *Heffran,* we relied on *Mays,* wherein we held the remuneration received by state prison inmates for services performed at the prison does not constitute "wages" earned by an employee under 42 Pa.C.S. § 8127 (relating to personal earnings exempt from attachment, execution or other process),[6] the Minimum Wage Act of 1968,[7] or the Unemployment Compensation Law.[8] In *Mays,* we stressed that there is no employer/employee relationship with inmates because their labor belongs to the prison. *See* 552 A.2d at 753.

In *Heffran,* we also cited *Salah v. Pennsylvania Labor Relations Board,* 38 Pa. Cmwlth. 397, 394 A.2d 1053 (1978), wherein we were asked to determine whether the General Assembly intended to provide inmates protection under the Public Em-

4. Federal cases have also held that inmates who provide services in a prison setting are not employees under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–09. *See Tourscher v. McCullough,* 184 F.3d 236 (3rd Cir.1999).

5. Act of October 5, 1984, P.L. 734, 35 P.S. §§ 7301–7320 (relating to employers supplying employees with material handling safety data sheets for hazardous substances used in the workplace).

6. In 1998, 42 Pa.C.S. § 8127 was amended to allow deductions from inmate remuneration for purposes of collecting restitution.

7. Act of January 17, 1968, P.L. 11, *as amended,* 43 P.S. §§ 333.101–333.115.

8. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

ploye Relations Act[9] (PERA) relative to work they perform while in prison. We determined that inmates were not public employees under PERA. *Salah*, 394 A.2d at 1054. We based our determination on the Supreme Court's ruling in *Philadelphia Association of Interns and Residents v. Albert Einstein Medical Center*, 470 Pa. 562, 369 A.2d 711 (1976). Reviewing that Court's majority and dissenting opinions, we concluded "it would be the unanimous opinion of our Supreme Court that inmates are not public employees within the meaning of PERA...." *Salah*, 394 A.2d at 1054.

These cases support a conclusion that prison labor does not create an employment relationship. The purpose of an inmate's imprisonment is penal. *Salah.* Inmates do not receive "wages" as the services performed are intended to train and rehabilitate, not to provide a source of income as a means of earning a livelihood. *Id.*

Therefore, narrowly construing the exceptions to governmental immunity in 42 Pa.C.S. § 8542, considering the surrounding circumstances, and mindful of the cases cited above, I would hold the trial court did not err in determining that an inmate performing work at a correctional facility is not an employee for purposes of the exceptions to governmental immunity in 42 Pa.C.S. § 8542(a) and (b).

For all these common sense and legal reasons, I would affirm the trial court's determination that the County is immune from suit based on allegations of the other inmate's negligence.

Judge LEADBETTER joins in this concurring and dissenting opinion.

9. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1102.2301.